208 Va. 129 (1967)
C. C. PEYTON, SUPERINTENDENT OF THE VIRGINIA STATE PENITENTIARY
v.
JOEL ALEXANDER.
Record No. 6436.
Supreme Court of Virginia.
June 12, 1967.
Present, All the Justices.
Petitioner convicted three charges robbery and two of burglary in 1958, granted habeas corpus and released on ground not afforded effective assistance of counsel. Appointment within three days of trial. Little evidence available on conduct of trial or activities of counsel. Trial court determination on habeas corpus not wrong as a matter of law.
Error to a judgment of the Corporation Court of the City of Norfolk, Hon. Edgar A. Massenburg, judge presiding.
Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General, on brief), for plaintiff in error.
Albert Teich, Jr., for defendant in error.
SNEAD
SNEAD, J., delivered the opinion of the court.
Joel Alexander, defendant in error, filed in the Corporation Court of the City of Norfolk a petition for a writ of habeas corpus ad subjiciendum in which he alleged that he was being unlawfully detained by C. C. Peyton, Superintendent of the Virginia State Penitentiary. In his petition Alexander alleged, among other things, that he was denied due process of law because he was not afforded effective assistance by his court-appointed counsel when he was tried and convicted on three charges of robbery and two charges of burglary on September 5, 1958.
At the conclusion of a plenary hearing had on the petition, the trial *130 court found that Alexander was not afforded effective assistance of counsel, granted the writ and ordered Alexander released, unless he "is detained pursuant to other valid judgment or process." As a result of the entry of this order we granted Peyton a writ of error.
The sole question presented by Peyton's assignment of error is whether the court erred in finding from the evidence that Alexander was not effectively represented by his court-appointed counsel.
The record shows that on August 10, 1958, Alexander was arrested for robbery, and at the September, 1958 term of the Corporation Court of the City of Norfolk the grand jury indicted him for three robberies and two burglaries.
According to Alexander, who had previously without the advice of counsel confessed to the police his guilt to all charges, he had no knowledge that the court had appointed an attorney to represent him until September 5, 1958, the day of his trial. He stated that he saw for the first time J. Stanley Shaffer, his court-appointed attorney, shortly before his trial commenced; that when he arrived in the courtroom Shaffer was already there; that his attorney did not question him about witnesses, his background or his mental history; that Shaffer only asked him whether he was guilty of the charges and whether he wanted a jury trial, and that "naturally I said I was guilty."
Following this brief discussion, Alexander, upon the advice of his attorney, pleaded guilty to the charges contained in the five indictments, and the court after finding him guilty as charged, ordered a presentence report on defendant's motion.
Thereafter, by order entered on September 23, 1958, the court committed Alexander to the Central State Hospital in Petersburg for observation. The record indicates that this was done because Alexander had "behaved very irrationally in jail", and it is silent as to whether Shaffer was present when the decision to commit was made. On December 15, Dr. Kenworthy Ogden, Acting Superintendent of the hospital, and Dr. W. A. Hauser, Clinical Director, wrote a letter to the court requesting authority to detain Alexander for an additional observation period of two months, because he had "exhibited shaking spells." The request was granted and by letter dated January 13, 1959, the doctors made this report to the court:
"As a result of our observation and investigations, it is our opinion that Joel Alexander has not been legally insane (psychotic) for the past three months. It is probable that he was not legally insane *131 (psychotic) between the dates of July 14, 1958 and September 5, 1958."
"He is in our opinion, not suffering from a convulsive disorder (epilepsy). He has on at least two occasions in the past, made suicidal gestures and has behaved irrationally, but only during confinement, and it is likely that he will again resort to this behavioral pattern. We are unable to observe an underlying mental disorder severe enough to justify further hospitalization."
"Joel Alexander's mental condition is at this time, in our opinion, such that he can properly stand trial, understand the proceedings and assist his counsel in his defense."
Alexander was returned to the court, and on January 22, another hearing was had to consider the probation officer's report, which had been filed, and for the imposition of sentences. According to the court order entered that day, the probation officer's report was read to Alexander in open court and Shaffer, court-appointed counsel for Alexander, advised the court that he did not wish to cross-examine the officer, or to take any exception to the report, or to present any additional evidence. The court then sentenced Alexander to a term of 25 years in the State penitentiary on each of the three robbery indictments and to a term of 10 years on each of the two burglary indictments, with one of the robbery sentences and the two burglary sentences to run concurrently with the two other robbery sentences.
Alexander testified that he did not see or consult with his attorney at any time between September 5, 1958, the day of his trial, and January 22, 1959, the day he was sentenced; that he was discharged from the United States Army because of mental illness; that thereafter he received mental treatment for about a year in North Carolina, and that Shaffer, his attorney, had no knowledge of his mental background at the time of his trial.
Lieutenant M. L. Ange of the Norfolk Police Division, who investigated one of the robbery charges in which Alexander was involved, and Judge H. Lawrence Bullock, who tried and sentenced Alexander on the five felony charges, were called to testify in behalf of Peyton. Shaffer, Alexander's court-appointed attorney, could not testify because of an illness from which he never recovered.
Lieutenant Ange remembered the case and the defendant, but he had no independent recollection of interrogating Alexander. His entire testimony shed no light on the issue of whether the court-appointed attorney rendered effective assistance to Alexander. *132 
Judge Bullock testified that he was not familiar with Alexander's name, and that he did not remember the trial of his case. Judge Bullock's testimony was focused on his practice of appointing attorneys for indigent defendants around 1958, and also the professional ability of Shaffer with regard to defending persons charged with a crime.
The record does not show the exact date Shaffer was appointed to defend Alexander. Judge Bullock said that it was his practice to appoint attorneys for indigent defendants on the day the grand jury returned the indictments, and that attorneys would be notified of their appointment either by letter or telephone, unless they were present on that day. In the case at bar, the grand jury convened on September 2, 1958, and under the court's practice this would have been the earliest date of Shaffer's appointment. The record is silent as to when he received notice of his appointment.
Judge Bullock further testified that he did not know what preparation Shaffer made for the trial of Alexander, but that he "is equipped and peculiarly so to weigh testimony and to investigate a case of criminal charge."
Code, | 8-491 provides in part:
"* * * [The] judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it."
Here, considering the evidence as a whole, we cannot say as a matter of law that the trial court's judgment that Alexander was not afforded effective representation at his trial is plainly wrong or without evidence to support it.
As has been said, the trial court ordered Alexander released, unless he "is detained pursuant to other valid judgment or process." We remand the case with direction that the Commonwealth be permitted to elect either to retry Alexander on the indictments, provided sentences thereon have not been completed, within a reasonable time, or to release him unless he "is detained pursuant to other valid judgment or process."
Modified and affirmed.